**Law Offices of Avrum J. Rosen, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Nico G. Pizzo, Esq.
Alex E. Tsionis, Esq.

*Attorneys for David J. Doyaga, Sr., Chapter 7 Trustee*

**Hearing Date: March 21, 2024**
**Hearing Time: 10:30 a.m.**
**Objection Deadline: March 14, 2024**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                                                              Chapter 7

RICONDA MAINTENANCE, INC.,                                  Case No.: 21-42842-nhl

                                         Debtor.

---------------------------------------------------------------x

## TRUSTEE'S MOTION FOR THE ENTRY OF AN
## ORDER AUTHORIZING TRUSTEE TO ENTER INTO
## PROPOSED SETTLEMENT PURSUANT TO RULE 9019
## OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

**TO:**    **THE HONORABLE NANCY HERSHEY LORD,**
         **UNITED STATES BANKRUPTCY JUDGE:**

David J. Doyaga, Sr., the Chapter 7 Trustee (the "Trustee") of the estate of Riconda Maintenance, Inc. (the "Debtor") by and through his counsel, the Law Offices of Avrum J. Rosen, PLLC, respectfully submits this as and for his motion (the "Motion") seeking the entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the proposed settlement agreement (the "Settlement Agreement") entered into by and between the Trustee on the one hand, and Manzoor Ahmed ("Ahmed"), (Ahmed and the Trustee collectively, the "Parties", and each individually as the "Party") on the other hand, and authorizing the Trustee to enter into same, respectfully states as follows:

### PRELIMINARY STATEMENT

1.     This Motion is submitted by the Trustee for the purpose of approving the settlement pursuant to the Settlement Agreement annexed hereto as **Exhibit "A"**, and authorizing the Trustee

to enter into the settlement.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. § 1408 *et seq.*

3. The statutory predicate for the relief requested herein is Rule 9019(a) of the Bankruptcy Rules and section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

**A. The Bankruptcy Filing and Appointment of the Trustee**

4. On November 11, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code").

5. David J. Doyaga, Sr. was appointed interim Chapter 7 Trustee of the Debtor's estate and, by operation of law, became the permanent Chapter 7 Trustee of the Debtor's estate.

6. Upon information and belief, prior to the Petition Date, the Debtor was engaged in a construction repair business and provided building resurfacing and façade repair services

7. Based upon the Trustee's review of the Debtor's books and records, the Trustee discovered that the Debtor, from the Debtor's checking account and within the ninety (90) days of the Petition Date, Transferred the sum $24,500.00 (the "Transfers") to Ahmed, for which the Trustee alleges that the Transfers were made on account of an antecedent debt owed by the Debtor to Ahmed.

8. The Trustee alleged that Ahmed is an insider and made demand upon Ahmed for the value of the Transfers.

9. The Trustee received a response from Ahmed which disputed the Trustee's allegations and raised alleged defenses.

**B.    The Tolling Agreements**

10. By So-Ordered stipulations dated November 14, 2023 and February 1, 2024 [Dkt. Nos. 82 and 85], the Trustee's time to commence an adversary proceeding and file a complaint to recover the Transfers was extended through and including March 29, 2024.

11. During this time, the Parties, through their respective counsel, exchanged information and engaged in settlement discussions.

**D.    The Proposed Settlement**

12. The Parties, negotiated at arms' length and reached an agreement, subject to the Bankruptcy Court's approval, resolving the Trustee's claims against Ahmed.

13. Ahmed has agreed to pay the Trustee, in full and final satisfaction of the Trustee's claims and the allegations against Ahmed, the total sum of $2,000.00 for the benefit of the bankruptcy estate and its creditors.

14. The initial payment of $500.00 has been remitted to the Trustee, pursuant to the terms of the Settlement Agreement. The Court and all interested parties are respectfully referred to the Settlement Agreement, which is annexed to the Motion as **Exhibit "A"**.

**RELIEF REQUESTED**

15. By this Motion, the Trustee seeks approval of the Settlement Agreement as being fair, equitable and in the best interests of the Debtor's estate in accordance with section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

16. For the reasons set forth more fully below, the Trustee believes that the settlement falls well above the lowest level of reasonableness and is in the best interests of the estate. Accordingly, the Trustee respectfully requests the Court to approve the Settlement Agreement.

## LEGAL AUTHORITY FOR APPROVAL OF SETTLEMENTS

17. Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) *reh'g denied,* 391 U.S. 909 (1968), *citing Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 130 (1939). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.,* 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best of fruitless litigation." *In re Carla Leather, Inc.,* 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984) *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

18. Bankruptcy Rule 9019(a) permits this Court to approve settlements. The Rule provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bank. P. 9019(a).

19. Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established by case law, focusing upon whether the purported settlement is reasonable and in the best interests of creditors. In *Anderson,* 390 U.S. at 414, the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself

of all the facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expenses and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation. *Anderson*, 390 U.S. at 414.

20. The United States Court of Appeals for the Second Circuit has stated that the responsibility of the Judge is "not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983), *cert denied sub. nom. Cossoff v. Rodman,* 464 U.S. 822 (193). *Accord, In re Gardi,* 273 B.R. 4, 18 (Bankr. E.D.N.Y. 2002); *In re Interstate Cigar Co.,* 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999); *In re Spielfogel,* 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997); *In re Purofied Down Products Corp.,* 150 B.R. 519, 522-23 (S.D.N.Y. 1993). The assessment of a settlement only requires identification of the issues in controversy "so that the bounds of reasonableness can be seen with some clarity." *Carla Leather,* 44 B.R. at 470.

21. In considering a proposed settlement, the court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if bankruptcy courts [had to conduct] . . . an exhaustive investigation and determination of the underlying claims in order to approve a settlement." *Purofied Down Products,* 150 B.R. at 522-23. In *Carla Leather*, the Court explained the policy underlying the abbreviated review of settlements under Bankruptcy Rule 9019 as follows:

> The very uncertainties of outcomes in litigation, as well as the avoidance of wasteful litigation expense, lay behind the Congressional infusion of a power to compromise . . . This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.

*Carla Leather,* 44 B.R. at 470; *see also Purofield Down Products,* 150 B.R. at 522-23.

22. In evaluating the propriety of a settlement, a court need not conduct a trial or even a "mini-trial" on the merits to actually resolve the exact factual and legal issues. *Interstate Cigar,* 240 B.R. at 822; *Spielfogel,* 211 B.R. at 143-33. Rather, the court must simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman,* 409 U.S. 1039 (1972). *See also In re International Distribution Centers Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1991); *In re Drexel Burnham Lambert Group Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991). In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson,* 390 U.S. at 444.

23. The settlement evaluation process is not designed to substitute the court's judgment for that of the trustee. *Carla Leather,* 44 B.R. at 465. While a court is not expected to "rubber stamp" the trustee's proposed settlement, *In re Ionosphere Clubs Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), the court should give considerable weight to a trustee's informed judgment that a compromise is fair and equitable. *Anderson,* 390 U.S. at 444; *International Distribution Centers,* 103 B.R. at 423; *Drexel Burnham Lambert,* 134 B.R. at 496; *Carla Leather,* 44 B.R. at 472. As stated by the district court in *International Distribution Centers,* the court should give weight to the support of not only the trustee but of other counsel to a settlement in determining the wisdom of the compromise. *Id.* at 423. Thus, a court should consider both the proponents' opinions and independently evaluate the arguments both for and against the settlement to determine whether the settlement should be approved. *Purofied Down Products,* 150 B.R. at 523.

24. The court, apprised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness. *Purofied Down Products,* 150 B.R. at 523; *In re Texaco, Inc.,* 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See, W.T. Grant,* 699 F.2d at 613 14; *Newman v. Stein,* 464 F.2d at 693; *Purofied Down Products,* 150 B.R. at 523-24. This concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion. *Newman v. Stein*, 464 F.2d at 693. Thus, a court should not insist upon the best possible settlement, but only that a settlement is within the range of reasonableness.

25. In deciding whether a settlement should be approved, courts in the Second Circuit have considered some or all of the following factors:

1. the relative benefits to be received by creditors under the proposed settlement;

2. the likelihood of success in the litigation compared to the present and future benefits conferred by the proposed settlement;

3. the prospect of complex and protracted litigation if the settlement is not approved;

4. the attendant expenses, inconvenience and delay of litigation;

5. the probable difficulties of collecting on any judgment that might be obtained;

6. the competency and experience of counsel who support the proposed settlement;

7. the extent to which the settlement is the product of arm's length bargaining; and not the product of fraud or collusion;

8. the nature and breadth of any releases to be issued as a result of the proposed settlement; and

9. the paramount interest of the creditors and proper deference to their reasonable views.

*See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974); *Ionosphere Clubs* 156 B.R. at 414; *Purofied Down Products,* 150 B.R. at 522; *International Distribution Centers,* 103 B.R. at 422; *In re Fugazy,* 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel Burnham Lambert,* 134 B.R. at 497; *Crowthers McCall,* 120 B.R. at 287; *Texaco,* 84 B.R. at 901; *In re Lion Capital Group, Inc.,* 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *Carla Leather,* 44 B.R. at 466. *See 10 Collier on Bankruptcy,* §9019.02 (15th Ed. Revised 1998).

26. In summary, the "very purpose of compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation." *Newman v. Stein,* 464 F.2d at 692.

## DISCUSSION

27. The Trustee respectfully submits that the Settlement Agreement falls well above the lowest point in the range of reasonableness and that the Settlement Agreement was negotiated at arms' length. There were multiple factors that the Trustee considered in reaching settlement.

28. First and foremost, the Settlement Agreement provides a mechanism to recover estate property – *i.e.*, the liquidation of the estate's interest in the preference Transfers – and to compensate the estate for the benefit of creditors. Here, following the Trustee's investigation into the Transfers, Ahmed has agreed to pay the total sum of $2,000.00 in full and complete satisfaction of the Trustee's claims against Ahmed before an adversary proceeding became necessary.

29. Second, the Trustee considered the costs and time delays associated with litigating the issues that would be presented in an adversary proceeding.

30. In addition, the Settlement Agreement provides certainty, and the Trustee avoids litigation with Ahmed, which litigation is uncertain. Moreover, litigation does not guarantee a favorable outcome. The Trustee reviewed Ahmed alleged defenses to the Trustee's claims, and if

8

successful would reduce the Trustee's recoverable claims to $3,000.00. The Trustee reviewed the records in this case, and maintains that he would be successful in his claims against Ahmed. However, even if the Trustee were to be successful in his claims against Ahmed, this may not necessarily translate into more funds available for creditors because continued litigation will also increase administrative costs in the form of attorneys' fees and costs, and other expenses associated with litigation, which would only decrease the distribution to creditors. In addition, in the event Trustee is successful, it is likely he would be unable to collect on the judgment.

31. The Trustee submits that the $2,000.00 sum recovered under the Settlement Agreement is favorable to the estate because it represents approximately ten percent (10%) recovery of the Debtor's interest in the Transfers, or if Ahmed was successful in his alleged defenses approximately seventy (70%) recovery, all without the concomitant significant administrative costs of further litigation.

32. Finally, the Settlement Agreement represents a complete resolution of the relief that would be sought as against Ahmed, which would bring the recovery of these Transfers to an end before filing a complaint or discovery became necessary.

[*Remainder of Page Intentionally Left Blank*]

33. As a result of all of the above, the Trustee exercised his best business judgment to enter into the Settlement Agreement. The Trustee submits that the Settlement Agreement is fair, reasonable and in the best interest of the Debtor's estate, and the Trustee recommends approval of the Settlement Agreement.

**WHEREFORE**, for all of the reasons set forth herein, the Trustee respectfully requests that this Honorable Court enter an order: (i) authorizing the Trustee to enter into and approving the Settlement Agreement; together with (ii) such other, further and different relief that this Court deems just, proper and equitable.

Dated: February 14, 2024
      Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By: */s/ Nico G. Pizzo*
Nico G. Pizzo, Esq.
Alex E. Tsionis, Esq.
38 New Street
Huntington, New York 11743
(631) 423-8527
npizzo@ajrlawny.com
atsionis@ajrlawny.com

*Counsel to David J. Doyaga, Sr.,
Chapter 7 Trustee*